IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| OHIO STANDS UP!, et al., | ) | Case No.: 3:20-cv-02814-JRK |
| | ) | |
| Plaintiffs, | ) | JUDGE JAMES R. KNEPP, II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DARRELL A. CLAY |
| | ) | |
| THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) ) | **FEDERAL DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS** |
| Defendants | ) | |
| | ) | |

NOW COMES the United States of America, by and through undersigned counsel, and hereby files its Reply to Plaintiffs' Response in Opposition to Federal Defendants' Motion to Dismiss. (Federal Defs.' Mot. to Dismiss, ECF No. 32, PageID # 301-28; Resp. to Mot. to Dismiss, ECF No. 33, PageID # 329-56.)

Plaintiffs fail to demonstrate they have standing, the most basic requirement for jurisdiction before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("the 'irreducible constitutional minimum' of standing consists of three elements… (1)… injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The Supreme Court analyzed organizational standing in *Sierra Club v. Morton*, a 1972 case which, contrary to Plaintiffs' belief, is still good law and continues to be cited by the Supreme Court. It is unclear how Plaintiffs concluded that *Sierra Club v. Morton* was overturned. There are subsequent lower-court decisions that cite *Sierra Club v. Morton* as "superseded by statute," due to its finding that citizens alleging aesthetic injury could not bring suit under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-06. After *Sierra Club v. Morton*,

amendments to the Federal Water Pollution Control Act of 1972, 33 U.S.C. § 1365, authorized citizen suits. *See Fairview Twp., Cty. of York, Commonwealth of Pa. v. U.S. E.P.A.*, 773 F.2d 517, 519 n.2 (3d Cir. 1985). Several cases recognize *Sierra v. Morton* as superseded by statute on other grounds, but the analysis on standing remains good law. (*Abbott v. BP Expl. & Prod., Inc.,* 781 F. Supp. 2d 453, 470 (S.D.Tex. 2011); *Smith v. Ohio State Univ.,* No. 17AP-218, 2017 WL 6016627, at *3 n.1 (Ohio App. Ct. Dec. 5, 2017)). *Sierra Club v. Morton*, 405 U.S. 727 (1972); *see Gill v. Whitford*, 138 S. Ct. 1916, 1936 (2018) (a plaintiff must show they are among the injured to establish standing (citing *Lujan*, 504 U.S. at 563 (quoting *Sierra Club*, 405 U.S. at 735)); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (generalized harm will not alone support standing; facts must show members' interests are affected) (citing *Sierra Club*, 405 U.S. at 734-36 ). To demonstrate standing on behalf of its members, Ohio Stands Up! must prove its members have standing to sue in their own right; its members must meet all the elements of standing. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewar Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004). However, Ohio Stands Up! has not submitted any affidavits from its members in support of their claims and therefore cannot establish organizational standing.

Although Plaintiffs recognize they bear the burden of establishing standing, they do not allege facts supporting each element of standing. *Lujan*, 504 U.S. at 560-61; (Resp. to Mot. to Dismiss, ECF No. 33, PageID # 334.) Plaintiffs do not allege that they suffered "an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560; (Federal Defs' Mot. to Dismiss, ECF No. 32, PageID # 317-21.) To be particularized, an injury must have affected Plaintiffs in a personal and individual way. *Spokeo*, 136 S. Ct. at 1548. To be concrete, an injury must actually exist. *Id*. Vague allegations of "discrimination under the Americans with Disabilities Act," violations of "their Constitutional right to freedom of movement, violations of their First Amendment rights to free exercise of religion and free speech," with no factual support, fail to demonstrate particularized and concrete injuries. (Am. Compl, ECF No. 27, PageID # 252.)

2

Further, Plaintiffs do not have standing because their claims are now moot; all state emergency health mandates have been lifted since the filing of Defendants' Motion to Dismiss. *COVID-19 Update: State of Emergency to be Lifted, Vax-A-Million Winners* (June 17, 2021) https://coronavirus.ohio.gov/wps/wcm/connect/gov/ohio+content+english/covid-19/resources/news-releases-news-you-can-use/covid-19-update-06-17-21 " 'A case becomes moot-and therefore no longer a "Case" or "Controversy" for purposes of Article III-"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." ' " *Jones v Haynes*, 736 F. App'x. 585, 588 (6th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "Parties lack a legally cognizable interest in a case's outcome when 'events … make it "impossible for the court to grant any effectual relief whatever to a prevailing party.' " " *Jones*, 736 F. App'x. at 588-89 (quoting *Fialka-Feldman v. Oakland Univ. Bd. Of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011)). Here, Plaintiffs' allegations rely on the assumption that data recording COVID-19 infections and deaths is false and inflated. (Am. Compl., ECF No. 27, PageID # 262-63.) They argue that this allegedly false data has caused the state of Ohio to issue emergency health orders that violate their constitutional rights. (*Id*., PageID # 251-53.) These claims are now moot because COVID-19 numbers in Ohio have decreased to the point that no emergency health orders are currently in place, therefore, any injunctive orders issued in this case would not provide meaningful relief. *COVID-19 Update: State of Emergency to be Lifted, Vax-A-Million Winners* (June 17, 2021) https://coronavirus.ohio.gov/wps/wcm/connect/gov/ohio+content+english/covid-19/resources/news-releases-news-you-can-use/covid-19-update-06-17-21.

Furthermore, Plaintiffs have not identified a waiver of sovereign immunity because the APA only waives sovereign immunity for equitable relief in the context of non-statutory judicial review. 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority…") Plaintiffs' Amended Complaint alleges violations under the Paperwork Reduction Act of 1995 ("PRA"), 44 U.S.C. § 3501, and the

Information Quality Act ("IQA"), 44 U.S.C. § 3516, both of which are statutes that preclude judicial review; therefore, sovereign immunity bars suit. (Am. Compl., ECF No. 27 PageID # 251.) Even if this Court were to find that § 702's waiver of sovereign immunity applies here, Plaintiffs still fail to identify some wrongful action or inaction by Federal Defendants. *Warin v. Dir. Dep't of the Treasury*, 672 F.2d 590, 591-92 (6th Cir. 1982). None of Plaintiffs' alleged "wrongful actions" are the actions of federal officials; rather they are the actions of state actors (mask mandates and stay at home orders) and private citizens (public ridicule and fact checking). (Am. Compl., ECF No. 27, PageID # 252-53.) Additionally, § 702 does not preempt "other limitations on judicial review," nor does it confer "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. That is the case here; the PRA and IQA do not allow for judicial review.

Plaintiffs allege an implied private right of action under the PRA and IQA by relying on the factors outlined in the 1975 Supreme Court decision *Cort v. Ash*, 422 U.S. 66, 78 (1975); *see Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 23-24. In *Transamerica Mortg. Advisors, Inc.(TAMA)*, the Supreme Court recognized that the *Cort* factors, standing alone, do not justify the implication of a private right of action, stating:

> "It is true that in *Cort v. Ash*, the Court set forth four factors that it considered 'relevant' in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort* —the language and focus of the statute, its legislative history, and its purpose, … are ones traditionally relied upon in determining legislative intent."

*TAMA*, 444 U.S. at 23–24 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979)). "The dispositive question remains whether Congress intended to create any such remedy." *TAMA*, 444 U.S. at 24. In the case at hand, an examination of the PRA and IQA reveals that Congress never intended to grant any private rights to members of an identifiable class, nor did they

4

proscribe any conduct as unlawful within those statutes. *Id*; *see also Taylor v. Brighton Corp.*, 616 F.2d 256, 259 (6th Cir. 1980).

In determining Congressional intent, courts look to the plain language of the statute. *Id*. Looking at the plain language of the PRA and IQA, neither statute includes a process for judicial review. 44 U.S.C. § 3507(d)(6); 44 U.S.C. § 3516. The IQA directs the Office of Management and Budget ("OMB") to draft guidelines for information quality and requires federal agencies to establish "administrative mechanisms" for correction requests and to inform OMB how such requests are handled. *See* 44 U.S.C. § 3516, Statutory Notes Paperwork Reduction Act. It contains no judicial enforcement mechanism. *See id*. The legislative history contained in the Executive Order creating the PRA is also instructive as to its purpose: "… only to improve the internal management of the executive branch and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies, or instrumentalities, its officers or employees, or any other person." Exec. Order No. 13073, 63 Fed. Reg. 6467 (Feb. 4, 1998), as amended in 44 U.S.C. § 3506. The language of the PRA specifically indicates it is not "subject to judicial review." 44 U.S.C. § 3507(d)(6). Based on the foregoing, it is evident that no private remedy can be implied from the language of these statutes.

Plaintiffs' reliance on *Dole v. United Steelworkers of Am.* to make claims under the PRA and IQA is misplaced. *Dole v. United Steelworkers of Am*, 494 U.S. 26 (1990) (superseded by statute, Paperwork Reduction Act of 1995; see *In Re: Lazarus, Inc.*, 7 E.A.D. 318, n. 76-78 (1997)). The *Dole* Court considered whether OMB exceeded its authority granted by the PRA when it disapproved health and safety regulations promulgated by the Department of Labor (DOL). *Id*. at 29, 32. In 1981, the DOL promulgated safety regulations that required notice to employees of hazardous materials. *United Steelworkers of Am., AFL-CIO-CLC v. Auchter*, 763 F.2d 728, 731-32 (3d Cir. 1985). The regulations were limited to the manufacturing sector. *Id*. The statute requiring the Secretary of Labor to promulgate safety standards also required that proposed rules be published first, allowing a period of thirty days for interested persons to comment on the

5

proposed rule. 29 U.S.C. § 655. This statute also specifically authorized judicial review through a petition to challenge the validity of the safety standard in the court of appeals for the circuit where the person lives or does business. 29 U.S.C. § 655(f). It was through this statute, **not** the PRA, that the United Steelworkers challenged the safety standard in the Third Circuit. *Auchter*, 763 F.2d at 736. The Third Circuit ultimately ordered the DOL to include all workplaces in the safety standard and the DOL eventually complied, after additional litigation. *Id*. at 743; *see United Steelworkers of Am., AFL-CIO-CLC v. Pendergrass*, 819 F.2d 1263, 1270 (3d Cir. 1987); *see also United Steelworkers of Am., AFL-CIO-CLC v. Pendergrass*, 855 F.2d 108, 114 (3d Cir. 1988).

The *Dole* Court reviewed whether OMB's actions exceeded its authority under the PRA; the Court undertook this review to enforce a Third Circuit ruling made pursuant to 29 U.S.C. § 655(f). The only reason the case made it to the Supreme Court was because 29 U.S.C. § 655(f) authorized judicial review in its plain language. In sharp contrast here, Plaintiffs cannot identify any section of the PRA nor IQA authorizing judicial review. This is because Congress did not intend to allow a private right of action under those statutes. Based on the foregoing, Plaintiffs cannot rely on *Dole* to support their claims. The *Dole* Court took a limited view on the purpose of the PRA and declined to extend it beyond information-gathering. After *Dole*, Congress amended the PRA's definition of "collection of information" to include "…requiring the disclosure to third parties or the public, …." 44 U.S.C. § 3502(3). This extended the public protection defense available under § 3512 to failures to meet requirements to provide notices to third parties and/or the public. 44 U.S.C. § 3512. This defense is only available in the context of an enforcement action as discussed in Federal Defendants' Motion to Dismiss. (Federal Defs.' Mot. to Dismiss, ECF No. 32, PageID #316-17.)

*Dole* does not support Plaintiffs' argument that the IQA provides a path for judicial review. Nor does it follow that Congress passed the IQA intending to authorize judicial review of "substantive actions related to dissemination under the APA." (Resp. to Mot. to Dismiss, ECF No. 33, PageID # 338.) Plaintiffs ignore the language in § 702 of the APA, which authorizes

6

judicial review "within the meaning of a relevant statute…. 5 U.S.C. § 702. They further attempt to shoehorn the governmental interests of the PRA and IQA into an implied private right of action.

Even if § 702's waiver of sovereign immunity applied or if an implied private right of action were allowed, Plaintiffs have not identified any federal agency action, as defined under 5 U.S.C. § 551(13), and they cannot show their right to a writ of mandamus is "clear and indisputable." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380-381 (2004). Under 28 U.S.C. § 1361, district courts have jurisdiction to compel an officer of the United States to perform a duty owed to a plaintiff, but that duty must be clear, ministerial, and nondiscretionary.[1]  *BP Care, Inc. v. Thompson*, 398 F.3d 503, 514-515 (6th Cir. 2005). Here, other than claiming a general "duty of honesty and fair dealing," Plaintiffs do not allege that they were owed a ministerial duty by a federal official, nor do they demonstrate that they have exhausted all other avenues of relief. *Id*.

In an effort to establish final agency action, Plaintiffs rely on 44 U.S.C. § 3506(e)(4), a section which clearly applies only to federal agencies. There it states: "[w]ith respect to statistical policy and coordination, each agency shall…(4) observe Federal standards and practices for data collection, analysis, documentation, sharing, and dissemination of information; …". *Id*. Plaintiffs latch onto the terms "standards and practices," but fail to identify how these terms equate to final agency action in the case at hand. (Resp. to Mot. to Dismiss, ECF No. 33, PageID # 338-89.) Plaintiffs supply no factual analysis that meets the *Bennett* test of finality. *Bennett v. Spear*, 520 U.S. 154, 177-8 (1997) (Federal Defs.' Mot. to Dismiss, ECF No. 32, PageID # 324-26.) Since

---

[1] Defendants do not address Plaintiffs' request for a "declaratory judgment" because they did not allege jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. For a court to have jurisdiction to issue a declaratory judgment, a case of actual controversy must exist. *Id*; *see Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009). As argued in the Motion to Dismiss, Plaintiffs have failed to demonstrate standing because they fail to allege imminent injury; therefore, they are not entitled to a declaratory judgment. *Id*. at 974. (Federal Defs.' Mot. to Dismiss, ECF No. 32, PageID # 321.)

Plaintiffs fail to show any final agency action, marking the consummation of an agency's decision-making process that caused them to suffer legal consequences, their claims are not reviewable under the APA. *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016).

Plaintiffs confuse *Sierra Club v. Morton* with *Sierra Club v. Jackson,* two entirely different cases, when arguing their Amended Complaint is not subject to dismissal for failure to state a claim. *Sierra Club v. Morton*, 405 U.S. 727 (1972); *Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011) (Resp. to Mot. to Dismiss, ECF No. 33, PageID # 346.) Regardless, in the Sixth Circuit false claims of final agency action should be dismissed for failure to state a claim under the APA, pursuant to Fed. R. Civ. P. 12(b)(6), and not for lack of jurisdiction. *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494-95, n. 4 (6th Cir. 2014). In *Jama*, the Sixth Circuit found the district court had jurisdiction pursuant to 28 U.S.C. § 1331. *Id*. at 494; *see also* n. 4 ("Because the APA does not confer jurisdiction, elements of a claim under the APA, including the final agency action requirement, are not jurisdictional… Accordingly, we address the 'final agency action' requirement of § 704 in the following section, where we consider whether *Jama* has a valid cause of action for his claims against Defendants." (internal citations omitted)). After analyzing the claims using the *Bennet* two-prong test, the *Jama* Court found no final agency action and ultimately affirmed the district court's dismissal. *Jama*, 760 F.3d at 495-96. "'The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.'" *Id*. at 496 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

In the case at hand, Plaintiffs do not identify any decisionmaking process by Federal Defendants. Plaintiffs summarize their claims in their opposition by stating: "Plaintiffs allege that DHHS violated statutorily required rulemaking claims by changing the method by which cause of death is determined for a single cause of death, namely COVID-19, and – separately – by implementing PCR testing as a standard for diagnosing COVID-19 status." (Resp. to Mot. to Dismiss, ECF No. 33, PageID # 332.) Plaintiffs cite no statute that would show agency rulemaking

8

procedures even apply to this alleged change; no facts to support that The Alert referred to in Plaintiffs' Amended Complaint should even be the product of federal rulemaking; nor do Plaintiffs show that the cause of death procedures were changed at all, let alone changed as a result of a federal decisionmaking process. (Am. Compl., ECF No. 27, PageID # 257.) Additionally, Plaintiffs do not show how they were directly affected by any of this alleged agency action. Plaintiffs do not state facts to show how the Ohio COVID-19 testing directly affected them; nor do they show how COVID-19 death reporting directly affected them. As discussed in Defendants' Motion to Dismiss, The Alert and Handbooks in question are not federal agency rules or action. (Federal Defs.' Mot. to Dismiss, ECF No. 32, PageID # 322-25.) Plaintiffs highlight cases involving the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, and the Safe Drinking Water Act of 1974, 42 U.S.C. § 300j, but the statutes at issue in those cases only prove that Congress will explicitly include provisions for judicial review when it intends to create a private right of action. Nothing in Plaintiffs' opposition establishes final agency action by Federal Defendants in the case at bar; therefore, Plaintiffs' Amended Complaint should be dismissed.

For the reasons set forth herein, Plaintiffs have failed to establish jurisdiction and failed to state a claim. Therefore, Federal Defendants respectfully request this Honorable Court dismiss Plaintiffs' second Amended Complaint with prejudice, pursuant to Fed. R. Civ. P. 12 (b)(1) and (6).

Respectfully submitted,

BRIDGET M. BRENNAN
ACTING UNITED STATES ATTORNEY

*s/ Angelita Cruz Bridges*
Angelita Cruz Bridges
(Ohio Reg. No. 0072688)
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, Ohio 43604-2624
419-259-6376 (PH); 419-259-6360 (FAX)
Angelita.Bridges@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), undersigned counsel certifies that the foregoing Reply is Nine (9) pages in length and within the page limitation of a matter assigned to the standard track or unassigned.

<i>s/ Angelita Cruz Bridges</i><br>
Angelita Cruz Bridges<br>
Assistant U.S. Attorney