IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**OHIO STANDS UP!, et al.,**

    Plaintiffs,

    v.

**U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, et al.,**

    Defendants.

CASE NO. 3:20 CV 2814

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Plaintiffs Ohio Stands Up!, Kristen Beckman, and Dr. Douglas Frank filed their Second Amended Complaint in this matter on March 31, 2021, asserting violations of the Paperwork Reduction Act ("PRA"), Information Quality Act ("IQA"), Administrative Procedures Act "APA", and the "[i]mplied [c]onstitutional [d]uty of [h]onesty and [f]air [d]ealing." (Doc. 27). They seek injunctive and declaratory relief. *See id.* Defendants – the United States Department of Health and Human Services ("DHHS"), its Secretary, Xavier Becerra[1], and its Chief Information Officer; the Center for Disease Control ("CDC") and its Director, Rochelle Walensky; the National Center for Health Statistics ("NCHS") and its Director Brian C. Moyer; Office of Management and Budget ("OMB") Director Shalanda Young (collectively, "Federal Defendants"), and several John/Jane Doe Defendants – filed the currently-pending Motion to Dismiss (Doc. 32), to which Plaintiffs filed an Opposition (Doc. 33), and Defendants replied (Doc. 34). For the reasons discussed below, Defendants' Motion is GRANTED.

---

1. As Defendants correctly point out, Becerra is automatically substituted as a party defendant for previously-named defendant Norris Cochran. *See* Fed. R. Civ. P. 25(d)(1).

**BACKGROUND**

Plaintiff Ohio Stands Up! is "an Ohio organization of Ohio citizens whose mission is to challenge the state of emergency [in] Ohio . . . challenge the various emergency mandates, orders and restrictions issued by Ohio Governor Mike DeWine and his Cabinet that are predicated on the existence of the Emergency . . . , uphold constitutional rights, and educate about the realities of COVID-19." (Doc. 1, at ¶ 3). It asserts Ohio's emergency mandates are driven by COVID-19 case and death counts published by Defendants and that its members have suffered economic loss from business closures, as well as infringements of their First Amendment rights and constitutional right to freedom of movement. *Id.* at ¶ 4. Plaintiff Beckman is a private citizen who asserts her "rights have been repeatedly trampled by the Emergency Mandates". *Id.* at ¶ 5. Beckman asserts the mandates interfered with her son's ability to play hockey, infringed on her First Amendment rights, and placed a burden on her right to travel. *Id.* at ¶ 6. Plaintiff Frank is a scientist, teacher, and researcher "who has been working to create and develop a business related to the analysis and understanding of statistical data regarding COVID-19 and other topics of public interest." *Id.* at ¶ 7. "He asserts Defendants' actions made launching his business and obtaining customers difficult, and hampered his ability to "perform in his role educating the public." *Id.* He further contends social media platforms and news outlets "have claimed his work was illegitimate or false." *Id.*

All Plaintiffs purport to connect their injuries to the Federal Defendants' actions in reporting COVID-19 case and death numbers and to emergency mandates implemented by Ohio government officials and agencies they assert are "driven and purportedly justified by" those numbers. *See id.* at ¶¶ 3-7; *see also id.* at ¶ 40 ("[Plaintiffs] have been injured by the policies implemented in response to this misleading data."); *id.* at ¶ 44 ("The false COVID-19 'case' and 'death' COUNTS informed the COVID-19 response of Ohio government officials and agencies.

2

They precipitated, shaped and were used to justify both the Emergency itself and the Emergency Mandates, which have foreseeably damaged many people throughout Ohio.").

Plaintiffs broadly base their claims on two primary contentions: (1) PCR testing is inaccurate and leads the Federal Defendants to report misleading COVID-19 case numbers; and (2) the CDC's March 24, 2020 Alert, which introduced a new International Classification of Diseases ("ICD") code for COVID-19 deaths, is invalid. They seek a declaratory judgment holding DHHS violated the PRA, IQA, and APA with its March 24, 2020 Alert. (Doc. 27, at 15). They further seek a declaratory judgment that DHHS's reporting of COVID-19 case and death data violates the PRA, IQA, and the duty of honesty and fair dealing. *Id.* at 16. Plaintiffs also seek injunctive relief, asking the Court to enjoin DHHS from reporting COVID-19 case numbers based on PCR testing, and enjoin DHHS from reporting COVID-19 deaths based on the March 24, 2020 Alert. *Id.* at 17. Finally, Plaintiffs seek a writ of mandamus to compel Defendants to follow the IQA and PRA. *Id.*

## STANDARD OF REVIEW

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by the Constitution and by statute." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 55 (2005) (internal quotation marks and citation omitted). Federal Rule of Civil Procedure 12(b)(1) requires dismissal where a court lacks subject matter jurisdiction. Challenges to a court's subject matter jurisdiction by way of a motion to dismiss fall into two categories: facial attacks and factual attacks. "A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis in original). A factual attack challenges

3

the factual existence of subject matter jurisdiction. *Id.* "[N]o presumptive truthfulness applies to the factual allegations". *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A factual attack requires the court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).

## DISCUSSION

Defendants move to dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (Doc. 32). Specifically, they contend the Court lacks jurisdiction over Plaintiffs' claims because: (1) Plaintiffs fail to identify a waiver of sovereign immunity; and (2) Plaintiffs lack standing to bring their claims under the APA, PRA, or IQA. Defendants further allege Plaintiffs' Second Amended Complaint must be dismissed because it fails to state a claim upon which relief can be granted. Plaintiffs contend they do have standing, sovereign immunity is inapplicable, and the Amended Complaint states a plausible claim for relief. For the reasons discussed below, the Court finds Plaintiffs lack standing and dismisses the case in its entirety.

Standing

Defendants contend Plaintiffs have not demonstrated standing to bring this suit. This is so, they allege, because: (1) Plaintiffs cannot demonstrate standing under the PRA or IQA because those statutes confer no private right of action, and (2) Plaintiffs cannot demonstrate standing under the APA or Article III. The Court agrees.

Standing is a "jurisdictional" matter, and a lack of standing deprives a court of subject matter jurisdiction. *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001). The standing requirement is meant "to ensure that the dispute sought to be adjudicated will

be presented in an adversar[ial] context and in a form historically viewed as capable of judicial resolution." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972) (internal citations and quotations omitted). The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy the "case or controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate she has suffered "injury in fact", that injury is "fairly traceable" to the actions of the defendant, and the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–72, (1982). "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian Coll.*, 454 U.S. at 472).

In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Id.* at 474–75. Like their constitutional counterparts, these "judicially self-imposed limits on the exercise of federal jurisdiction," are "founded in concern about the proper-and properly limited-role of the courts in a democratic society," *Warth*, 422 U.S. at 498; but unlike their constitutional counterparts, they can be modified or abrogated by Congress, *see* 422 U.S. at 501.

"Where . . . Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." *Sierra Club*, 405 U.S. at 732. "Where the party does not rely on any specific statute authorizing invocation of judicial process, the question of

standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy.'" *Id*. (quoting *Baker v. Carr*, 269 U.S. 186, 204 (1962)).

No Private Right of Action: Paperwork Reduction Act, Information Quality Act

Defendants first argue Plaintiffs cannot demonstrate standing under the PRA or IQA because neither provides a private right of action. Applying the factors from *Cort v. Ash*, 422 U.S. 66, 78 (1975), Plaintiffs contend the PRA and IQA evidence a Congressional intent to create an implied private right of action. The Court agrees with Defendants.

*PRA*

Congress enacted the PRA to reduce the burdens of federal paperwork requests. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990); *Cuzco-Mora v. Holder*, 592 F. App'x 437, 441 (6th Cir. 2014) ("Congress enacted the PRA to reduce the federal paperwork burden on individuals, small businesses, state and local government, and other persons, and to minimize the cost to the federal government of collecting and disseminating information.") (citing 44 U.S.C. § 3501). "Congress designated OMB the overseer of other agencies with respect to paperwork and set forth a comprehensive scheme designed to reduce the paperwork burden." *Dole*, 494 U.S. at 32.

The PRA provides, in part,

**(d)** With respect to information dissemination, each agency shall—

**(1)** ensure that the public has timely and equitable access to the agency's public information, including ensuring such access through—

**(A)** encouraging a diversity of public and private sources for information based on government public information;

**(B)** in cases in which the agency provides public information maintained in electronic format, providing timely and equitable access to the underlying data (in whole or in part); and

6

**(C)** agency dissemination of public information in an efficient, effective, and economical manner;

**(2)** regularly solicit and consider public input on the agency's information dissemination activities;

**(3)** provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products;

* * *

**(e)** With respect to statistical policy and coordination, each agency shall—

**(1)** ensure the relevance, accuracy, timeliness, integrity, and objectivity of information collected or created for statistical purposes;

**(2)** inform respondents fully and accurately about the sponsors, purposes, and uses of statistical surveys and studies;

**(3)** protect respondents' privacy and ensure that disclosure policies fully honor pledges of confidentiality;

**(4)** observe Federal standards and practices for data collection, analysis, documentation, sharing, and dissemination of information;

**(5)** ensure the timely publication of the results of statistical surveys and studies, including information about the quality and limitations of the surveys and studies; and

**(6)** make data available to statistical agencies and readily accessible to the public.

44 U.S.C. § 3506. The "purposes" section of the PRA states, *inter alia*, that one purpose thereof is to "ensure the integrity, quality, and utility of the Federal statistical system". 44 U.S.C. § 3501(9).

Numerous courts have found the PRA contains no private right of action. *See Wag-Aero, Inc. v. United States*, 35 F.3d 569 (7th Cir. 1994) ("Wag–Aero also charges that the FAA's circulation of the questionnaire violated the Paperwork Reduction Act, but it has no standing under the Act to bring this claim.") (citing *Palmer v. Chicago*, 755 F.2d 560, 570–71 (7th Cir. 1985)); *Smith v. United States*, 2008 WL 5069783, at *1 (5th Cir.) ("The Paperwork Reduction Act provides a defense to administrative or judicial enforcement

7

actions, but does not create a private right of action for alleged violations of the statute.") (citing 44 U.S.C. § 3512; *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999)); *Hyatt v. Off. of Mgmt. & Budget*, 908 F.3d 1165, 1173 (9th Cir. 2018); *Ass'n of Am. Physicians & Surgs. v. United States Dep't Health & Human Servs.*, 224 F. Supp. 2d 1115, 1129 (S.D. Tex. 2002) ("The PRA does not create a private right of action"); *Tozzi v. EPA*, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) ("[Section] 3512 is only a defense to enforcement actions. Otherwise, the Act has no provision for a private right of action for alleged violation of the Act."); *Teledyne, Inc. v. United States*, 50 Fed. Cl. 155, 190 (2001) ("The Paperwork Reduction Act does not authorize a private right of action.") (internal citation and quotation omitted).

In this case, Plaintiffs are not the subject of any administrative or judicial enforcement action, nor are they being required to report information; rather, they challenge generally the Federal Government's collection of COVID-19 related data. Based on the above-cited caselaw, they have no standing to bring such a claim under the PRA.

*IQA*

The IQA provides in full:

> **(a)** In general.—The Director of the Office of Management and Budget shall, by not later than September 30, 2001, and with public and Federal agency involvement, issue guidelines under sections 3504(d)(1) and 3516 [this section] of title 44, United States Code, that provide policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by Federal agencies in fulfillment of the purposes and provisions of chapter 35 of title 44, United States Code [this chapter], commonly referred to as the Paperwork Reduction Act.
>
> **(b)** Content of guidelines.—The guidelines under subsection (a) shall—
>
> **(1)** apply to the sharing by Federal agencies of, and access to, information disseminated by Federal agencies; and
>
> **(2)** Require that each Federal agency to which the guidelines apply—

>> **(A)** issue guidelines ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by the agency, by not later than 1 year after the date of issuance of the guidelines under subsection (a);
>
>> **(B)** establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency that does not comply with the guidelines issued under subsection (a); and
>
>> **(C)** Report periodically to the director—
>
>> (i) the number and nature of complaints received by the agency regarding the accuracy of information disseminated by the agency; and
>
>> (ii) how such complaints were handled by the agency.

44 U.S.C. § 3516, note.

Plaintiffs' claims are based upon the allegedly misleading and inaccurate COVID-19 information reported by various governmental agencies. They assert this violates the IQA's requirement that statistical data reported by the Government have "utility" and "integrity". (Doc. 27, at 15). But as the Fourth Circuit explained, the IQA "creates no legal rights in any third parties . . . Instead, it orders the Office of Management and Budget to draft guidelines concerning information quality and specifies what those guidelines should contain." *Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006). Thus, the *Salt Institute* court persuasively held the IQA "does not create a legal right to access to information or to correctness", found plaintiffs had "not alleged an invasion of a legal right and, thus, have failed to establish an injury in fact sufficient to satisfy Article III." *Id.*; *see also Mississippi Comm'n on Env't Quality v. E.P.A.*, 790 F.3d 138, 184 (D.C. Cir. 2015) ("[A]lmost every court that has addressed an Information Quality Act challenge has held that the statute 'creates no legal rights in any third parties[]'".) (quoting *Salt Inst.*, 440 F.3d at 159); *see also Family Farm Alliance v. Salazar*, 749 F. Supp. 2d 1083, 1090 (E.D. Cal. 2010) ("It is undisputed that the IQA provides no private right of action.").

Plaintiffs attempt to get around this caselaw by relying on the test for an implied private right of action set forth in *Cort v. Ash*, 422 U.S. 66, 78 (1975). There, the Supreme Court outlined several factors:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* (internal citations omitted). However, "[t]he dispositive question remains whether Congress intended to create any such remedy." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979); *see also see also Bowling Green v. Martin Land Development Co.*, 561 F.3d 556, 559 (6th Cir. 2009) ("[S]ubsequent [Supreme Court] decisions have made clear that congressional intent is the 'determinative factor.'"). And "[i]f the statute itself does not 'displa[y] an intent' to create 'a private remedy' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter or how compatible with the statute.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017) (quoting *Alexander v. Sandoval*, 532 U.S.275, 286-87 (2001)).

The question the Court asks "is not simply who would benefit from the act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294 (1981) (citation omitted). As the Sixth Circuit explained regarding the first *Cort* factor:

> The Supreme Court has been reluctant to imply a cause of action under statutes which create benefits for the general public ... Although the plaintiff may be a member of the public and thus an intended beneficiary of the statute, the likelihood that Congress intended members of the general public to enforce such statutes is

10

> not great. In contrast, the inference that Congress intended to create legally enforceable rights is strongest when the statutory language focuses unmistakably on a specific and identifiable class of beneficiaries . . . Accordingly, an implied cause of action may be found when language in the pertinent statute expresses an 'unmistakable focus on the benefited class' of which the plaintiff is a member.

*Howard v. Pierce*, 738 F.2d 722, 725-26 (6th Cir.1984) (citations omitted); *see also Sierra Club v. Pena*, 915 F. Supp. 1381, 1390 (N.D. Ohio 1996) ("Plaintiffs have not pointed to any language in the Act from which the Court can find the class of beneficiaries distinguishable from the general public it must find in order to imply a private right of action.") (internal citation omitted), *aff'd sub nom. Sierra Club v. Slater*, 120 F.3d 623 (6th Cir. 1997); *Smeyres v. Gen. Motors Corp.*, 660 F. Supp. 31, 34 (N.D. Ohio 1986) ("An examination of 15 U.S.C. § 1664 fails to disclose any Congressional focus on any identifiable class of beneficiaries. Rather, the benefits of 15 U.S.C. § 1664 accrue to the general public. In sum, the Court finds that the plaintiff is not one of a class for whose "especial benefit" 15 U.S.C. § 1664 was enacted."), *aff'd*, 820 F.2d 782 (6th Cir. 1987).

Plaintiffs contend the purposes of the IQA and PRA are to ensure the public is provided accurate information. They emphasize the number of times the word "public" appears in the PRA, and assert this "indicates Congress intended to protect the public from useless, misleading, and dishonest data". (Doc. 33, at 9); *see also* Doc. 33, at 8 ("The IQA and PRA both contain substantial language recognizing the importance of public access to honest and accurate information.").

But as described above – the plain language of the PRA and IQA do not indicate Congress intended to create a private right of action based on either statute. Neither has a provision for judicial review. Nor have Plaintiffs pointed to anything compelling to suggest otherwise. Indeed, as the Supreme Court explained, "[t]he question is not simply who would benefit from the [identified statute], but whether Congress intended to confer federal rights upon those

11

beneficiaries." *Sierra Club*, 451 U.S. at 294. Although Plaintiffs have pointed to language suggesting Congress enacted these laws for the benefit of the general public, they have not pointed to anything compelling suggesting Congress intended for them to be privately enforceable. As such, the Court finds Plaintiffs lack standing to bring their claims under the PRA and IQA.

Article III Standing / Administrative Procedures Act

Next (and in conjunction with the IQA and PRA), Plaintiffs seek to rely on the APA as the legal basis for their claims. The APA provides for judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702. A plaintiff seeking judicial review of agency action under the APA must demonstrate both constitutional and "prudential" standing. *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 966-67 (6th Cir. 2009) (citing *Courtney v. Smith*, 297 F.3d 455, 460-61 (6th Cir. 2002). Again, to satisfy Article III's standing requirement, Plaintiffs must allege an "injury in fact" that is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Defendants contend Plaintiffs have not alleged sufficient facts to establish any of these elements here. (Doc. 32, at 18-21); (Doc. 34, at 2-3). Plaintiffs acknowledge their burden to establish standing (Doc. 33, at 6), but do not specifically respond to Defendants' arguments in this regard. For the reasons set forth below, the Court finds Plaintiffs have not satisfied the Article III standing requirement.

*Injury*

Because Plaintiffs seek declaratory judgment, mandamus, and injunctive relief, they must assert both past injuries and the threat of future injuries. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983). Plaintiffs must first show an injury in fact. An injury in fact "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)

(internal quotation marks omitted). For an alleged "injury in fact" to confer standing to seek injunctive relief, a plaintiff must face a threat of ongoing or future harm. *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000); *see also Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) (The "threat" of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone."). The purpose of the imminence requirement "is to ensure that the alleged injury is not too speculative for Article III purposes— that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (emphasis in original) (internal quotation marks omitted). Allegations of a possible future injury are insufficient to confer standing to seek injunctive relief. *Id.* The alleged injury must be "distinct and palpable", *Warth*, 422 U.S. at 501, as opposed to merely "[a]bstract", *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

The injuries alleged here are as follows. Ohio Stands Up! asserts it has been injured because its members have been "wrongly accused of reporting false data . . . censored on social media . . . and defamed in the press[.]" (Doc. 27, at 5). It further asserts – very generally – that its members "have suffered economic loss from business closures and restrictions, discrimination under the Americans with Disabilities Act, violations of their Constitutional right to freedom of movement, violations of their First Amendment rights to free exercise of religion and free speech." *Id.*

An organization has associational standing to pursue relief on behalf of its members if it can show "(1) the organization's 'members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 967 (6th Cir. 2009)

13

(quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). That is, Ohio Stands Up! must show that its members have suffered an injury in fact.

Plaintiff Beckman asserts she has a medical exemption and firmly held religious belief that prevents her from wearing a mask and her 5-year-old son had to quit hockey because Beckman could not attend without a mask. (Doc. 27, at 5). She further asserts injuries in: (1) being censored and "fact checked" on social media, (2) an employer-required quarantine following a visit with family at Thanksgiving pursuant to Ohio's emergency mandates; and (3) "great fear" from members of her family "caused by believing the truth of the data being presented by Defendants and reported by mainstream news regarding the danger of COVID-19, which has caused ostracizing and separation of family members." *Id.* at 5-6.

And Plaintiff Frank[2] asserts injury in that "a number of social media platforms and news outlets have claimed his work was illegitimate or false", which has created "substantial difficulties in launching his business and obtaining customers", and it has been "exceedingly difficult for [him] to perform his role in educating the public." *Id.* at 6.

Preliminarily, the Court agrees with Defendants that Plaintiffs cannot show standing for the injunctive relief requested in part due to Ohio's lifting of the emergency mandates upon which Plaintiffs' claims are based. *See Rescinded Public Health Orders*, OHIO DEP'T OF HEALTH, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/public-health-orders/public-health-orders-rescinded; *Press Release, Governor Mike DeWine, COVID-19 Update: State of Emergency to be Lifted, Vax-A-Million Winners Announced* (June 17, 2021),

---

[2]. Defendants assert that Frank is "listed in the 'parties' section of the Amended Complaint, but he is not a party in the caption of the case, a violation of Fed R. Civ. P. 10". (Doc. 32, at 19). The Court need not reach this procedural argument because even properly considering Frank as a party, the matter is subject to dismissal.

14

https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/covid19-update-state-of-emergency-to-be-lifted-vaxamillion-winners-06172021.

Courts have often described mootness as "the doctrine of standing set in a time frame." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* If the plaintiff's personal interest, or "stake in the outcome of the lawsuit," is eliminated during the litigation, "the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, —– U.S. ——, 133 S.Ct. 1523, 1528 (2013).

At their core, many of Plaintiffs' alleged injuries are based on the State of Ohio's emergency mandates. *See* Doc. 27, at ¶¶ 3-6 (asserting injuries based on business closures, restrictions, mask requirements, quarantine, etc. due to Ohio's emergency mandates). Because these mandates are no longer in place, these injuries are not certainly impending or imminent and cannot support a request for injunctive relief.

Defendants further assert more broadly that Plaintiffs fail to allege any concrete, actual, or imminent injuries supported by details or particularized facts. (Doc. 32, at 18-20). However, this Court need not reach this question because, as set forth below, Plaintiffs have not adequately alleged their injuries are caused by Defendants' actions or would be redressed by the relief requested.

*Fairly Traceable / Redressability*

Even assuming some or all of Plaintiffs' alleged injuries are sufficiently particularized and concrete, as well as imminent and certainly impending, Plaintiffs also must demonstrate the

injuries are fairly traceable to Defendants' allegedly illegal conduct and redressable by a decision of this Court. *Lujan*, 504 U.S. at 560. Plaintiffs can show neither.

For an injury to be fairly traceable to a defendant's conduct, it must not be the result of "the independent action of some third party not before the court." *Id.* (internal quotation marks omitted). But an alleged injury may be fairly traceable if the injury is "produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). That is, "unless the defendant's actions had a 'determinative or coercive effect' upon the third party, the claimant's quarrel is with the third party, not the defendant." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (quoting *Bennett*, 520 U.S. at 169); *see also Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) ("[A]n injury that results from the third party's *voluntary and independent* actions or omissions does not" satisfy Article III standing requirement.") (emphasis in original). Traceability may be established based on "the predictable effect of Government action on the decisions of third parties" as opposed to "mere speculation about the decisions of third parties." *Dep't of Commerce v. New York*, ––– U.S. –––, 139 S. Ct. 2551, 2566 (2019).

At base, the injuries Plaintiffs allege are predicated on the voluntary and independent decisions of multiple third parties: the State of Ohio; Plaintiff Beckman's employer, family members, and her son's hockey team; unidentified people on social media, social media platforms, and news organizations. This Court finds Plaintiffs' allegations that these injuries are the result of the Federal Defendants' cited actions in reporting case numbers and death numbers relies on too indirect and attenuated a line of causation to satisfy the "fairly traceable" prong. Their causation argument relies on "mere speculation about the decisions of third parties" rather than the "predictable effect of Government action on third parties", *Dep't of Commerce v. New York*, 139

S. Ct. at 2566. The Second Amended Complaint does not allege Plaintiffs' injures are "produced by a determinative or coercive effect" of the Government's actions upon someone else. *Bennett*, 520 U.S. at 169. Rather, Plaintiffs' "quarrel" here is "with the third part[ies], not the defendant[s]." *Turaani*, 988 F.3d at 316.

Furthermore, Plaintiffs have not alleged facts to suggest their injuries would be redressed by the relief requested in this suit. "Redressability is 'a likelihood that the requested relief will redress the alleged injury.'" *Nader v. Blackwell*, 545 F.3d 459, 471 (6th Cir. 2006); *see also Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself."). Plaintiffs ask this Court to enjoin the Federal Defendants from reporting COVID-19 cases based on PCR testing, and enjoin the Federal Defendants from reporting COVID-19 deaths based on the March 24, 2020 Alert. But even were the Court to issue such a decision, Plaintiffs have not alleged facts demonstrating this would change the actions of the independent third parties of whose actions Plaintiffs ultimately complain. Thus, Plaintiffs have failed to demonstrate redressability.

Mandamus

Plaintiffs also seek a writ of mandamus. *See* Doc. 27, at 18 ("Plaintiffs request that the Court grant a writ of mandamus to compel the appropriate Defendants . . . to follow the law and/or order their staff to do the same."). Although 28 U.S.C. § 1361 provides federal district courts with original jurisdiction to issue writs of mandamus in extraordinary circumstances, as with any claim, Plaintiffs "must nevertheless satisfy Article III's standing requirements in order to seek mandamus relief." *Cohn v. Brown*, 161 F. App'x 450, 452 (6th Cir. 2005). Because Plaintiffs have not done so for the reasons stated above, their mandamus request is also dismissed. *See id.* (citing *S. Hill Neighborhood Ass'n v. Romney*, 421 F.2d 454, 460–61 (6th Cir. 1970) (affirming district court's

17

finding that a plaintiff lacked standing to bring a mandamus action under either 28 U.S.C. §§ 1361 or 1651 before addressing whether mandamus relief would otherwise be available).

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 32), be and the same hereby is GRANTED.

      s/ *James R. Knepp II*
      UNITED STATES DISTRICT JUDGE